United States District Court
EASTERN DISTRICT OF WASHINGTON

**UNITED STATES OF AMERICA**

**V.**

**SHAWN P. SATHER**

(Name & Address of Defendant)

CRIMINAL COMPLAINT

CASE NUMBER: MJ-10-401

I, the complainant in this case, state the following is true and correct to the best of my knowledge and belief.

That on or about December 9, 2010, in the Eastern District of Washington, SHAWN P. SATHER, did knowingly and intentionally distribute visual depictions, which visual depictions had been mailed, shipped and transported in interstate and foreign commerce, and which contained materials which had been mailed and so shipped and transported, by any means including by computer, the productions of such visual depictions having involved the use of minors engaging in sexually explicit conduct and such visual depictions were of such conduct as defined by 18 U.S.C. § 2256, all in violation of 18 U.S.C. § 2252(a)(2).

This complaint is based on these facts:

Continued on the attached sheet incorporated herein by this reference. ☒ Yes ☐ No

Signature of Complainant
Leland E. McEuen, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence

December 22, 2010 at Spokane, Washington
Date City and State

Cynthia Imbrogno
United States Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

P01221JJ.SYG.wpd

MJ-10-401

AUSA Assigned: SVM

Affidavit in support of Search Warrant and Complaint

## AFFIDAVIT

STATE OF WASHINGTON )
:ss
County of Spokane )

Leland C. McEuen, being first duly sworn on oath, deposes and states:

## Introduction

1. I have been employed as a Special Agent of the FBI since February 1999, and am currently assigned to the Spokane Resident Agency of the Seattle Division. While employed by the FBI. I have investigated federal criminal violations related to high technology or cyber crime, child exploitation, and child pornography. I have gained experience through training at the FBI and everyday work relating to conducting these types of investigations.

2. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. I am investigating the activities of the Internet account registered to Shawn Sather, who resides at 1603 E. Ostrander Ave., Spokane, WA 99207. As

will be shown below, there is probable cause to believe that someone using the Internet account registered to Shawn Sather has received, possessed, distributed, or transported child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I submit this application and affidavit in support of a search warrant authorizing a search of Shawn Sather's residence, located at 1603 E. Ostrander Ave., Spokane, WA, (the "premises"), as further described in Attachments A and B. Located within the premises to be searched, I seek to seize evidence, fruits, and instrumentalities of the forgoing criminal violations, which relate to the knowing transportation, shipment, receipt, possession, distribution, and reproduction of child pornography. I request authority to search the entire premises, including the residential dwelling and any computer and computer media located therein where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime. I also submit this affidavit in support of the proposed criminal complaint and arrest warrant.

4. The statements in this affidavit are based in part on information provided by Colorado Springs Police Detective Adam Romine an Internet Crimes Against Children (ICAC), Task Force member and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing

a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of §§ 2252 and 2252A, are presently located at 1603 Ostrander Ave., Spokane, WA.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A, relating to material involving the sexual exploitation of minors.

a. 18 U.S.C. § 2252(a)(1) prohibits knowingly transporting or shipping in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct.

b. 18 U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct that has been mailed, shipped, or transported in interstate or foreign commerce. That section also prohibits knowingly reproducing any visual depiction of minors engaging in sexually explicit conduct for distribution in interstate or foreign commerce by any means, including by computer or the mail.

c. 18 U.S.C. § 2252(a)(4) prohibits possessing one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been transported in interstate or foreign commerce, or that were produced using materials that had traveled in interstate or foreign commerce.

d. 18 U.S.C. § 2252A(a)(1) prohibits knowingly mailing, transporting, or shipping child pornography in interstate or foreign commerce by any means, including by computer.

e. 18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

f. 18 U.S.C. § 2252A(a)(3)(A) prohibits a person from knowingly reproducing child pornography for distribution through the mail or in interstate or foreign commerce by any means, including by computer.

g. 18 U.S.C. § 2252A(a)(3)(B) prohibits knowingly advertising, promoting, presenting, distributing, or soliciting through the mail, or using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means any material in a manner that reflects the belief or

is intended to cause another to believe that the material is or contains a visual depiction of an actual minor engaging in sexually explicit conduct, or an obscene visual depiction of a minor engaging in sexually explicit conduct.

h. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

**DEFINITIONS**

6. The following definitions apply to this Affidavit and Attachment B:

a. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b. "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use

of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

c. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." See 18 U.S.C. § 1030(e)(1).

d. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to,

keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

g. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

I. "Minor" means any person under the age of 18 years. See 18 U.S.C. § 2256(1).

j. "Peer-to-peer file-sharing" ("P2P") is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In

general, P2P software allows the user to set up files on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting searches for files that are currently being shared on another user's computer.

k. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. See 18 U.S.C. § 2256(2)(A).

l. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

m. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

7. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers,

computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

8. Computers basically serve five functions in connection with child pornography: production, communication, distribution, storage, and social networking.

9. With digital cameras, images of child pornography can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

10. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11. The Internet affords individuals several different venues for meeting each other, obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can

recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently

viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

**PEER TO PEER (P2P) FILE-SHARING IS A GROWING PHENOMENON**

14. Peer to Peer (P2P) file-sharing allows individuals to meet each other through the Internet, engage in social networking, and trade files.

15. One aspect of P2P file-sharing is that multiple files may be downloaded in parallel, which permits downloading more than one file at a time.

16. A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four sets of numbers separated by decimal points, is unique to a particular computer during an online session. The IP address identifies the location of the computer with which the address is associated, making it possible for data to be transferred between computers.

17. Third-party software is available to identify the IP address of the P2P computer sending a file. Such software monitors and logs Internet and local network traffic.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

18. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish fully on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even

computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

19. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

20. Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crimes, within the

meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

## BACKGROUND OF THE INVESTIGATION

### A. Previous Investigation and First Search Warrant:

21. On October 6, 2008, Police Officer (PO) Michaele Sage, Canon City (Colorado) Police Department, advised SA Daniel T. Leyman (FBI Special Agent in Colorado), that she had conversed via the internet with an individual using the e-mail address "new_grandma_99@yahoo.com" in July and August, 2008. At that time, PO Sage was acting in an undercover capacity, posing as a woman with a nine year old daughter from Canon City. The subject indicated to PO Sage that he/she was from Texas, and intended to travel to Canon City to have sex with PO Sage's persona's daughter. The subject also sent PO Sage several images of what PO Sage believes to be child pornography.

22. On October 6, 2008, SA Leyman served an FD-909 administrative subpoena on Yahoo!, requesting subscriber records regarding e-mail address new_grandma_99@yahoo.com. On October 10, 2008, Yahoo! provided their response to this subpoena. These records identified new_grandma_99 as using Yahoo! on 10/08/2008 at 13:26:58 GMT from I.P. 207.299.187.128. A subsequent subpoena identified the registered user of that I.P. at that time as

Winton Hall at 3450 North Lake Shore Drive, #2902, Chicago, Illinois, telephone number 773-281-7587.

23. On January 14, 2009, SA Shannon McDaniel (FBI Special Agent, Chicago, Illinois) executed a federal search warrant at 3450 North Lake Shore Drive #2902, and seized computers and electronic data storage devices. A forensic evaluation of the computers revealed over 1,000 images and videos of child pornography and chat logs. A chat log was identified with mkay1287. A subpoena was served on Yahoo! for subscriber information and I.P. logging data for mkay1287. Yahoo! responded that mkay1287 was registered on 11/16/2007 at 14:01:65 GMT from 67.185.244.121. A subpoena was served on Comcast for the registered user of I.P. 67.185.244.121 at that date and time. Comcast responded that the registered user was Shawn Sather, 1603 E. Ostrander Ave., Spokane, WA 99207, account created 6/2/2005.

24. In the new_grandma_99's chat log with Mkay1287 on 11/27/2008, mkay1287 stated he/she was in Washington state. new_grandma_99 stated, "do you like to see videos of young girls?" mkay1287 responded, "i do, and pics." new_grandma_99 stated, "here is a video" They continued their chat with comments about how each of them had images and collections that they had or

wanted. They commented about the files they were sending to each other during the chat. Based on my training and experience I believe the chat logs show trading in child pornography.

25. On January 14, 2010, SA McEuen obtained the current utility billing record for 1603 E. Ostrander Ave., Spokane, and saw it was in the name of Shawn P. Sather. A current commercial database search showed Shawn Patrick Sather, date of birth 1/17/1976, residing at 1603 E. Ostrander Ave. Spokane, and his driver's license also lists that address, with the last update as of 5/16/2009. A Department of Licensing registration check shows that two vehicles are currently registered to Sather at that address.

26. A criminal history check showed that Shawn Patrick Sather was found guilty in federal court (with a reference to the UCMJ) for possession and transportation of child pornography on 11/22/2001. It also showed he is currently a registered sex offender with the listed address of 1603 E. Ostrander Ave., Spokane, WA.

28. On January 19, 2010, this Court issued a search warrant authorizing the search of 1603 E. Ostrander Ave., Spokane, Washington for items constituting evidence, instrumentalities, and/or fruits of crimes involving the sexual

exploitation of children, and the possession, distribution and production of child pornography, all in violation of 18 U.S.C. §§ 2251 and 2252A. The search warrant was executed on January 21, 2010, wherein several items were seized, to include:

1B1 EMachine CPU Tower, s/n QAW4970600870

1B2 80GB hard drive, s/n 11S24P3664ZJ1JN669EW54

1B3 Seagate 4.3GB hard drive, s/n 6AX0CWTB

1B4 Western Digital 30GB hard drive, s/n WMA9U1576049

1B5 Black Compaq CPU tower, no s/n

1B6 Seagate hard drive, s/n GTZ62637

1B7 Black "Case Logic" DVD/CD holder w/numerous disks

1B8 Bag w/ multiple CD/DVD spindles with disks

1B9 Bag with multiple CD/DVD/3.5 disks

1B10 "Scientific Atlanta" modem

1B11 "Netgear" router

1B12 Samsung 3.2 GB hard drive, s/n 0085JIEJC03067

1B14 Box of computer items

1B15 Generic CPU tower, no s/n

1B16 Box of misc. computer items w/ disks inside

1B19 PNY Micro SD card

1B21 HP Laptop, s/n CND7122H7S

1B22 16GB Thumbdrive

1B26 2GB "Kingston" SD Card

1B27 Three CD/DVD's from kitchen

29. During the execution of this warrant, Shawn Sather was also present inside the residence. Your afffaint made contact with Sather and advised him of his Constitutional Rights (*Miranda* Rights). Mr. Sather indicated he understood those right and signed a written *Miranda* waiver so indicating. Sather then agreed to participate in an interview regarding the subject of the search warrant. Sather admitted to collecting and trading child pornography through the Internet. He signed a Consent to Assume Online Presence for his e-mail account mkay1287@yahoo and provided the password "prisoner352". As part of the Yahoo account, the user has the following files available; My Profiles, Contacts, Account Info and Mail with the subfiles of; Inbox, Drafts, Sent, Spam, Trash, My Photos and My Attachments. Sather was not arrested but was informed the

investigation would be furthered to the United States Attorney's Office after the forensic examination was completed.

29. Based upon the then application of *United States v. Comprehensive Drug Testing*, 579 F3.d 989 (9th Cir. 2009), *opinion revised and superseded by, United States v. Comprehensive Drug Testing,* __ F.3d __, 2010 WL 3529247 (9th Cir. Sept. 13, 2010), the forensic examination of the electronic evidence seized during this warrant, has not yet been completed. As a result, charges have not been filed at this time as the investigation is still pending. However, along with this application for a second search warrant and complaint, is a motion to remove the previous search requirements based upon new legal precedent.

**B. <u>New Information/Probable Cause in Support of Second Search Warrant:</u>**

30. On December 9, 2010 at approximately 3:14 p.m. MST Det. Romine was online in an undercover capacity in Colorado Springs, Colorado. While online Det. Romine observed a person using the screen name "Prisoner76" was logged onto a Peer to Peer trading network. Det. Romine viewed Prisoner76's profile and found that it had been created December 8, 2010. Prisoner76 had one shared directory that was titled "Pictures". The directory was read only, which

meant no one could upload pictures to the folder. The folder contained 21 sub-folders and one zip file. Det. Romine. Det. Romine downloaded 150 files from the folders and an additional 60 files from the zip file. The majority of the files appeared to Romine to be images of child pornography, including child bestiality. Specifically, Romine identified the following as examples:

-8dicked.jpg, an image that depicted an adult male having vaginal intercourse with a nude prepubescent female.

-_38_36_33_3.jpg, an image that depicted an adult male inserting his penis into the anus of a nude prepubescent female.

-1_1475_.jpg, an image that depicted an adult male performing oral sex on a nude prepubescent female.

-03.jpg, an image that depicted a prepubescent female performing oral sex on an adult male.

-Snapshot 2010-08-19 10-23-09.jpg, an image that depicted an adult female licking the vagina of a nude prepubescent female.

31. Det. Romine used commercially available software to identify the Internet Protocol address and confirmed all the images were received from the same IP address of 76.104.228.158. 76.104.228.158 was owned by Comcast

Communications and resolved to Spokane, WA. Det. Romine served a court order upon Comcast for the registered user of the IP 76.104.228.158 at the date and time of the downloads. Comcast responded that the user was Shawn Sather, address 1603 E. Ostrander Ave., Spokane, WA, telephone number 509-475-5285, e-mail ID's: snasather, toodlings, alleysphone, rollabaker, simplyallison and spsather.

32. Based upon the new information/investigation, your affaint submits there is probable cause to believe that there is a new IP address associated with this same residence and/or Mr. Sather that is again engaged in the distribution (trading), receipt and possession of child pornography.

**CHARACTERISTICS COMMON TO INDIVIDUALS INVOLVED IN THE DISTRIBUTION, TRANSPORTATION, RECEIPT, OR POSSESSION AND ATTEMPTED DISTRIBUTION, TRANSPORTATION, RECEIPT, OR POSSESSION OF CHILD PORNOGRAPHY**

33. As set forth above, probable cause exists to believe that an individual at 1603 E. Ostrander Ave., Spokane, WA, has distributed, transported, received, or possessed child pornography, or has attempted to commit these crimes. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I

have had discussions, I know that there are certain characteristics common to individuals involved in such crimes:

a. Those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often possess and maintain

copies of child-pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

e. Those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have

been in contact and who share the same interests in child pornography.

f. Those who distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

34. That Shawn Sather residing at 1603 E/ Ostrander Ave., Spokane, WA, exhibits the common characteristics described above in paragraph 29 of someone involved in the distribution, transportation, receipt, and possession of child pornography, or the attempt to distribute, transport, receive, or possess child pornography, is evidenced by the facts that are set forth in this affidavit, including:

a. There were over 100 images of prepubescent children engaged in sexual activity that fall within the definition of Child Pornography downloaded from Prisoner76, by Det. Romine.

b. Sather has a prior conviction for child pornography, was pending indictment on a second case and was again found to possess child pornography on this third investigation.

c. Of the file names that were descriptive, they were suggestive of

child pornography.

## CONCLUSION

35. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that an individual who resides at the residence described above is involved in possession and distribution of child pornography. Your affiant respectfully submits that there is probable cause to believe that an individual residing in the residence described above has violated 18 U.S.C. §§ 2252 and 2252A. Additionally, there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2252A, is located in the residence described above, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

36. In the event agents examining the digital devices and records discover, in plain view, evidence of criminal conduct other than the receipt/possession of child pornography described in this affidavit, the examiner shall not seize such information or data until a supplemental search warrant is

obtained which specifically authorizes the seizure of that data related to other criminal conduct.

37. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Leland C. McEuen, Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 22nd day of December, 2010.

Cynthia Imbrogno
United States Magistrate Judge